183 So.2d 313

**Willie BROWN et al.**

v.

**SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY et al.**

No. 47934.

Feb. 23, 1966.

Johnson & LeBlanc, Robert E. Johnson, New Iberia, for applicants.

Helm, Simon, Caffery & Duhe, Patrick T. Caffery, New Iberia, for respondent.

HAMLIN, Justice:

The instant suit and the case of Ellis (Raggette) v. Southern Farm Bureau Casualty Insurance Company, et al., La., 183 So.2d 321, arising out of the same head-on automobile collision, were consolidated for trial in the district court and for argument in the Court of Appeal; separate judgments were rendered in each case. The Court of Appeal, Third Circuit, affirmed the judgments of the trial court which rejected the demands of plaintiffs. 177 So.2d 597; 177 So.2d 603. We directed Certiorari to the Court of Appeal (Art. VII, Sec. 11, La. Const. of 1921), in order that we might review the matters. 248 La. 436, 179 So.2d 275. One opinion with separate judgments will be rendered herein.

The trial court and the Court of Appeal found that plaintiffs in both suits failed to prove their claims to a legal certainty by a reasonable preponderance of the evidence. The principal error assigned to the judgments of the Court of Appeal by relators is

that it failed to place the burden of exculpation of negligence upon the defendants. A determination as to whether negligence can be attributed to both drivers herein or only to one or to neither is our primary concern.

The Court of Appeal correctly and succinctly stated the facts as follows:

"The accident occurred at night on December 25, 1960, at approximately 7:30 P.M. The pickup truck [1953] was being driven by Willie Brown in an easterly direction [on Louisiana Highway 674 near New Iberia, Louisiana] and the Chevrolet automobile [1957] was being driven westwardly by Wilfred Raggette. There were patches of rather heavy fog in the area where the accident occurred. The vehicles collided head-on, causing severe personal injuries. There was heavy damage to the left front of both vehicles. It is apparent that one of the vehicles invaded the proper lane of travel of the other, or that both vehicles partially crossed the center dividing line of the highway. There was no physical evidence by which the point of collision could be fixed as to its location on the highway. The automobile came to rest on the shoulder and partially in the ditch on the north side of the highway, and the pickup truck came to rest in the south lane, facing west, having been turned completely around from the direction in which it was proceeding.

"Seated in the cab of the pickup truck were plaintiffs Willie Brown, Mrs. Brown, Justina Johnson Alexander, and Joseph Ben, with his small minor daughter in his lap."

Riding with Wilfred Raggette were Ilsia Ellis (now his wife), Septima Boutte, Melba Verdun and Alfred Raggette.

The instant suit for damages was brought by Willie Brown and wife, Mary Lee Comeaux Brown, Joseph Ben, and Justina Johnson Alexander, for herself individually and on behalf of her minor daughter, Mabel Alexander. Named as defendants were Wilfred E. Raggette and Southern Farm Bureau Casualty Insurance Company (hereinafter referred to as Southern Farm), insurer of the car driven by Wilfred Raggette and insured in the name of Alton Raggette, and also the insurer of a farm truck owned by Joseph Raggette, father of Wilfred Raggette. Plaintiffs prayed for an in solido judgment against Wilfred E. Raggette and Southern Farm on both Raggette policies.

Plaintiffs alleged that the collision was caused solely and proximately by the gross and wanton carelessness, recklessness, lack of skill, ineptitude, and disregard of the rights of others shown by Wilfred Raggette. One particular allegation of negligence was that he failed to drive his vehicle on his own proper side of the road and entered the East bound traffic lane occupied by Willie Brown's vehicle.

Southern Farm moved for summary judgment. The trial court denied the motion on the ground that the depositions and affidavits submitted by the parties showed that there were issues of material facts to be decided by the court. In its reasons for denying the motion, the court stated that Southern Farm sought to exonerate itself from liability on the ground of violation of the cooperation clauses of the policies. In its reasons for judgments on trial of the merits, the court stated that it was unnecessary for it to consider whether Wilfred and Ilsia Raggette breached the cooperation clauses of the policies. The Court of Appeal did not mention the alleged violation of the cooperation clauses.

Defendants denied the allegations of plaintiffs' petition. They charged Willie Brown with gross negligence, recklessness, and want of care. They also averred that the passengers in Brown's truck were guilty of gross negligence which was a contribut-

ing proximate cause of the accident. Among the averments of negligence attributed to Brown was one which charged that he drove his vehicle in a fog onto the wrong side of the highway, without signal or warning, directly in the path of the oncoming Raggette car.

In the case of Ellis (Raggette) plaintiffs prayed for an in solido judgment against Willie Brown and Southern Farm. Plaintiffs alleged that both Willie Brown and Wilfred E. Raggette were guilty of negligence which constituted the proximate cause of the injuries sustained by Ilsia Ellis Raggette.[1] (On motion of his counsel, the claim of Wilfred Raggette was later dismissed with prejudice.)

Southern Farm filed a motion for summary judgment, which was denied for the same reasons set forth above. It answered plaintiffs' petition, averring that Wilfred Raggette was proceeding on Louisiana Highway 674 in his own proper right hand

---

[1]. The petition, signed by the Attorneys for Ilsia Ellis, wife of/and Wilfred E. Raggette, contains the following allegations in Article 6 thereof: "That due to the gross and wanton negligence of both Willie Brown and Wilfred E. Raggette, petitioner, Ilsia Ellis Raggette, suffered severe physical injuries as well as damage to her personal belongings and that the aforesaid negligence of the said Willie Brown and Wilfred E. Raggette is specifically alleged in the following respects, but not in limitation thereof: a) In travelling at an excessive rate of speed and in a reckless manner; b) In failing to reduce speed when approaching oncoming traffic; c) In failing to maintain a prop-

er lookout; d) In failing to keep their vehicles under such control as would have avoided the accident, and being inattentive to the surroundings; e) In failing to keep their vehicles under proper control particularly in view of prevailing weather conditions; f) In failing to see the other automobile involved in time to avoid the collision; g) In failing to stop their vehicles before striking each other; all in violation of the Louisiana Highway Statutes and the general tort law of Louisiana, and all of which negligence was the proximate cause of the injuries which were sustained by petitioner, Ilsia Ellis Raggette."

lane of traffic at a safe and prudent speed. It further averred that the accident complained of was caused, solely and proximately, by the gross negligence and recklessness of Willie Brown.

During trial on the merits, the testimony of numerous witnesses was elicited. This testimony, in our opinion, is neither so conflicting nor impossible that it cannot be analyzed and rationalized so as to make the findings we will set forth hereinafter.

Willie Brown, forty-four years old at the time of trial, testified that just prior to the accident, his windshield, windshield wipers, brakes and lights were good, and that he had taillights. He stated that just before Christmas, 1960, he had trouble with one light but corrected it by buying a whole sealed beam; that with his wife's help he checked the lights after the replacement and they were both burning.

Brown stated that on Christmas Day, 1960, he had dinner at his house with his wife, Joseph Ben, Justina Johnson Alexander, and their little girl Mabel; that soda pop and one little bottle of sweet wine (given to him by Mrs. Norton, his employer's wife) was served; that after dinner, the group sat around, played music, and then around six o'clock decided to go to Serice's Club (situated outside of New Iberia) to call up Brown's brother in Opelousas. When the group left Brown's house, it was dark enough to burn the car lights. They stopped at Serice's Club, and while his wife made the call Brown drank two bottles of beer. (While there is testimony that Brown had formerly been charged with "Driving While Intoxicated," there is no contradictory evidence to the fact that he only drank two bottles of beer at the Club that night.) After remaining at the Club for thirty-five or forty minutes, the group headed East for a return to Brown's house. (The evidence of Brown and his passengers is to the effect that he was driving at an approximate speed of thirty-five miles per hour.) The accident occurred shortly thereafter, and Brown's version is as follows:

"Q. Tell the Court about the accident.

"A. Well, we was driving along and one car drove by me and another car was coming behind, you know, so he got about here to the end of the wall back there.

BY THE COURT:

Estimate of 60 feet.

"A. Then he got over the line on my side and I was kind of watching that so I kind of pulled off a little bit so he did like he was going back again so all at once he come right back again and that's where he caught me, you see, and I just couldn't get out of his way.

"Q. Where were you when he hit you?

"A. Where was I?

"Q. Where was your vehicle, your truck?

"A. Oh, I was on the side of the road. About—on the right-hand side. My side of the road."

Brown stated that he was using his windshield wipers, because it was foggy and a little fog had fallen on his windshield; that the fog was not so thick that he could not see what was happening; that he saw the headlights on the Raggette automobile without any trouble. Brown stated that he saw the Raggette car coming around a curve, and "as he come around the curve he got over the line and come back a little bit and then he come out all at once when he got close to me and that's where he caught me."

Mary Lee Comeaux Brown, wife of Willie Brown, affirmed Brown's testimony. She further stated that when they left Serice's the headlights on the truck were shining; that they were driving about thirty or thirty-five miles per hour; that a little fog was coming in. Her version of the accident is as follows:

"Q. Will you tell the Court how this accident happened, if you remember.

"A. When we left from the club we was going on our way back home and then a good piece away I saw this car coming and I saw it cross over on our side. And I hollered at my husband to stop and he pulled to the side and I don't know just how far he pulled to the side, and I saw it was coming right into us and that's the last I remember.

" * * *

"Q. Mary, your testimony is then that the Raggette car suddenly pulled out into your lane when it was right in front of you?

"A. Yes sir, not too far away from us.

"Q. That's how you remember the accident happening?

"A. Yes sir. That's how I remember.

"Q. The Raggette car suddenly pulled out toward you when it was right in front of you?

"A. Yes."

Joseph Ben, a passenger in Brown's truck who suffered injuries, stated that he had Christmas dinner at Brown's house and did some drinking. He had no recollection of the accident.

Justina Johnson Alexander, a passenger in Brown's truck who was seriously injured, testified that she ate Christmas dinner at Brown's house. When asked if she had seen Brown drink on Christmas Day, she said she saw him drink a beer or two in Serice's place.

W. B. Norton, Willie Brown's employer, testified that Willie had worked for him

for four years at the Bayou Jack Marina, Inc., of which he was a part owner; that he was a good worker. Norton stated that he did not know whether Willie had had his truck lights repaired, but that he had jumped on him about having one light on the truck; that at the time he spoke to Willie, Willie indicated that with some effort, perhaps the courtesy switch, he could get both lights to function. Norton admitted that in the past he had bailed Brown out of jail for law violations with which he was charged.

Lawrence LeBlanc, a resident of Opelousas, by discovery deposition stated that he was driving approximately 100 to 150 feet behind Willie Brown's car at the time of the accident. He testified that Brown had a taillight and that there were lights ahead of him; he did not know if both headlights were burning. He stated that at the time of the accident, the weather was foggy in patches. When asked how the accident happened, he replied:

"Well, I just can't—I'm sure I can't tell you sure how that happened. All I know he was driving on his right side of the road. He was ahead of me and I didn't see him bad driving at all. All I know he stay to his side and I can't just tell how the accident happened. All I seen is when they hit. That's all I seen, they hit. Now, how the accident happened, I don't know."

Amos Johnson was a passenger in Lawrence LeBlanc's car, which was being driven immediately behind Brown's pick-up truck at a speed of approximately thirty to thirty-five miles per hour. Johnson testified that he was aware of the presence of Brown's truck and witnessed the accident; that Brown was driving on his side of the road, and that his vehicle had taillights and headlights; he placed the Raggette car at about one and a half feet across the center line. Johnson's appreciation of the weather was that it was foggy in spots, sprinkling of fog.

Orelia Johnson, wife of Amos Johnson, who was also a passenger in the LeBlanc car, stated that the weather was foggy in spots. She said that she saw Brown's truck immediately in front of LeBlanc's car, and that Brown was driving on the right hand side of the road; that Brown's truck had headlights and taillights, and that she could see the taillights but could not see the headlights.

Viola Johnson, daughter of Amos and Orelia Johnson, was also a passenger in the LeBlanc car. She said, "we could see a little truck tick-tacking in front of us." She said that Brown was straight on his side of the road and that his truck had taillights and headlights. She said that the weather was foggy in spots, different spots, and that the windshield wiper was in operation on the car in which she was a passenger. She as-

sisted the injured and accompanied them in the ambulance to the hospital.

On December 27, 1960, Wilfred Raggette gave a statement to Alcee R. Melancon, insurance adjuster for defendant Southern Farm. Melancon said that the statement was in his handwriting but was written just as Wilfred told him; he testified that Wilfred was unable to sign the statement, so he had Wilfred's brother Alfred sign it. The statement recites that on December 25, 1960 Wilfred Raggette was driving his brother Alton's car; the weather was foggy; the black top was wet; Raggette's speed was 40–45 miles per hour; the car lights were on. It continues, "Then I saw this International Pick-up, no lights in my lane of traffic and going east. I was on him when I saw him. I put on my brakes and stayed in my lane of traffic. We hit head-on in my lane, the west bound lane of traffic. * * * This is a true statement. * * *" The statement bears a cross-mark and recites that Wilfred could not move his arm to sign. It is then signed by Alfred Raggette.

On April 7, 1962, Wilfred Raggette gave an oral deposition in which he contradicted in substantial part his statement of December 27, 1960. He stated that on September 16, 1961 he married plaintiff Ilsia Ellis, who was sitting next to him on the front seat of the car when the accident occurred; that she told him to tell the truth in his deposition. When asked to tell in his own words how the accident happened, he said:

"Well, I'll tell the truth now. It was foggy that night. And I was traveling a little on the side the white line. I was on the other lane. And it happened when I saw something in front. The light must have been very dim. And I stepped on the brakes. That's the last thing I remember."

Wilfred further stated in the deposition that he, Alfred and Alton were buying the car together, but that the car was in Alton's name. He affirmed that he was over the white line when the accident happened. He stated that he was a little frightened when he talked to the insurance adjuster, being in a state of shock; that he was trying to cover up, keeping himself out of trouble; that his brother Alfred said the same thing to cover up for him. When asked if he lied every time he was frightened, he said it was the first time he had ever been frightened like he was then and was trying to protect his brother (the insured). He further stated:

"Q. Did you know when you gave that statement that that insurance man was representing your brother's insurance company?

"A. I didn't know who the man was.

"Q. He didn't tell you who he was?

"A. He mighta' told me, but I was in the hospital. I was suffering.

I didn't know who it was. They was giving me shots, all kinds of medicine, all that.

"Q. But you were conscious enough to tell an untrue story. That's correct, isn't it?

"A. Yeah.

"Q. You knew at the time that you were not telling a true story.

"A. Yeah.

"Q. You were not too doped up to know that what you were saying was not true.

"A. I don't know at the time what I was saying. After I told him that, I knew it wasn't true.

"Q. You knew while you were telling him that it wasn't true?

"A. Yeah, I guess I had knew."

In his oral deposition Wilfred stated that he was going forty to forty-five miles per hour at the time of the accident, and that no one in the car cautioned him about the speed. He said he was driving over the center line, "Because I could see the white line, that I was trailing it more on that side, beings the fog was too thick. I didn't want to go too far to the right. So, I was traveling the white line where I could see the white line. I could see the white line good." He further stated that only a split second elapsed between the time he saw Brown's truck and the time the accident

happened; that he tried to get back into his lane of traffic, putting on his brakes and ducking, but it was too late.

At the time of trial, Wilfred Raggette testified on cross-examination; his testimony affirmed that given in the deposition.

Ilsia Ellis Raggette testified at length with respect to the injuries she suffered in the accident. With respect to the accident, she testified that the weather was real foggy, and that they were driving over the white line. On cross-examination, she stated that from the time of the accident she knew that Wilfred was not in his lane.

Alfred Raggette was riding in the back seat of the Raggette car and was not seriously injured. He testified that his brother was traveling in his proper lane at the time of the accident. Alfred consistently maintained—to the extent of giving affidavits—that Wilfred was driving on his proper side of the road. He stated that he had been given $25.00 by Southern Farm for time off from work.

Cleveland Peter Raggette testified that he went to the hospital after the accident; his father, Joseph Raggette, had arrived before him. Cleveland testified that Willie Brown was in the room with his brother Wilfred; that when his father questioned Willie as to how the accident happened, Willie responded that he didn't know what happened, he was hunting for the Nelson Canal Road and his truck had no lights.

Cleveland stated that Willie said he had his head out of the window hunting for the Nelson Canal. (Willie Brown testified that he had no recollection of this conversation.)

Melba Verdun testified that at the time of the accident she was sitting on the back seat of the car Wilfred Raggette was driving. She was knocked unconscious and suffered some injury; her testimony discloses that she really had no recollection of the accident. Alcee R. Melancon, insurance adjuster, testified that Southern Farm paid Melba Verdun for the injuries she sustained.

Septema Boutte, a passenger in the Raggette car, did not appear as a witness; she gave a written statement on December 28, 1960, which was accepted in evidence. She said she was seated on the front seat; that the car was not being driven fast and that Wilfred was on his side of the road in his lane of traffic. Alcee R. Melancon, insurance adjuster, testified that Septema Boutte had been paid by Southern Farm for injuries sustained.

Sgt. William Lohr, Louisiana State Police, who investigated the accident, testified that he spoke with Wilfred Raggette at the scene of the accident when he was lying on the ground with a broken leg and at the hospital where he was having his leg put in traction. Sgt. Lohr said:

"Wilfred Raggette stated he was going towards New Iberia in the '57 Chevrolet and that the vehicle, the '53 International pickup came upon his side of the lane while passing a car and ran into him. He stated he only saw one headlight. He said it was too late for him to do anything to try to avoid the accident."

Sgt. Lohr further testified that a passenger in Brown's truck told him that at the time of the accident Willie Brown was attempting to pass another car. This statement, plus Raggette's statement to him following the accident, provoked Sgt. Lohr's filing charges of improper passing against Brown. (The record does not reflect any disposition of the charges.) Sgt. Lohr said that the left side of Brown's truck was totally demolished; that the truck did not have a right headlight; that the right side was not damaged.

The testimony of Lt. James Desormeaux, Louisiana State Police, who assisted Sgt. Lohr at the scene of the accident and in the investigation, more or less confirms that of Sgt. Lohr.

A study of the lengthy testimony of record, quoted and analyzed in part supra, convinces us that a determination of negligence can be made herein. We find that the preponderance of the evidence is to the effect that Willie Brown was driving on his right side of the road at the time the accident occurred. The preponderance of the testimony is to the effect that Brown was driving at a moderate speed, and

that both of his headlights were burning. The finding of Sgt. Lohr was precipitated by Wilfred Raggette's statement at the time of the accident, which was contradicted by subsequent statements of Raggette himself. We conclude that Willie Brown exculpated himself from negligence and proved with reasonable certainty that Wilfred Raggette was driving over the center line of the highway. There is no evidence of contributory negligence on the part of the passengers in Brown's truck.

The preponderance of the evidence, especially that of Wilfred Raggette and his wife, is to the effect that Wilfred Raggette was not driving on his side of the highway when the collision took place. We conclude, from the evidence and Raggette's pleadings, in which he alleged his own negligence, that Raggette was negligent and that his driving over the center line of the highway was the proximate cause of the head-on collision.

The finding of Wilfred Raggette guilty of such negligence as constitutes the proximate cause of the accident does not bring about a finality of these matters.

The quantum of damages has never been determined. The trial court under its findings stated that a consideration of the question was unnecessary.

The question of insurance coverage under the policies issued to Alton Raggette and Joseph Raggette has not been determined. Willie Brown, et al., urge in this Court that Joseph Raggette's policy should cover any excess liability over and beyond the limitations set forth in Alton Raggette's policy.

As stated supra, the trial court found it unnecessary to pass upon the question as to whether there was a violation of the cooperation clauses of the instant policies. In this Court, Southern Farm re-urges the allegations of its motions for summary judgment.

Therefore, these cases will have to be remanded to the trial court for determination of the questions involved, supra.

For the reasons assigned, the judgment of the Court of Appeal, Third Circuit, is reversed and set aside. The cause is remanded to the district court for further proceedings according to law and consistent with the views hereinabove expressed. Costs to await the final determination of this cause.