LEMMON, Judge.
Following an intersectional two car collision, the owner of each car filed a separate suit to recover his property damage. The two suits were consolidated for trial on the merits, after which the trial court dismissed both suits. Both plaintiffs have appealed.
The collision occurred at 8:30 P.M. on August 20, 1968 at the intersection of Jackson Avenue and Prytania Street in the City of New Orleans. At this point Jackson Avenue (north-south street) has four lanes of travel divided by a narrow neutral ground, and Prytania Street (east-west street) is an undivided thoroughfare with two lanes of travel.
William F. Klock was traveling west on Prytania Street, and Donald A. Eskridge, Jr. was driving a police car south on Jackson Avenue. Klock testified that the semaphore signal light turned to green when he was approaching the intersection and was about a half block away. A vehicle was stopped for the light in the center of the roadway, facing in his direction of travel. Since the vehicle remained stopped when Klock reached the corner, he proceeded to pass the vehicle on the right. On the corner to Klock’s right was a large house with an iron fence and high shrubbery, which created an obstruction of his view in that direction (the direction from which Esk-ridge was coming). When Klock entered the intersection, he saw the police car approaching from his right with its flashing lights on. He applied the brakes and left nine feet of skid marks, but struck the police car on the left side behind the front fender. Klock’s car stopped upon impact, and the police car continued from Jackson Avenue for approximately 150 feet until it came to rest.
Eskridge testified that he was on a Code 2 emergency call, in which situation he can use his flashing lights and siren, but must observe the speed limit and traffic signals, although he is allowed to proceed with caution through a red light if the intersection is clear. However, the emergency nature of his mission is of no significance to this case since he claimed that the light turned green in his favor when he was about a half block from the intersection.
*420 We therefore have an instance of two parties claiming to have entered an intersection on a favorable light at the same time, an impossible situation. Obviously, one entered on a favorable light, and the other entered in disobedience to a red light.
Each side produced several disinterested witnesses, each of whom testified positively as to the color of the light at the time the vehicles entered the intersection. Their testimony is in hopeless conflict.
The trial judge dismissed both suits without assigning reasons. However, this result could only be obtained if the trial judge (1) found both plaintiffs contribu-torily negligent, or (2) found that neither plaintiff proved his case by a preponderance of the credible evidence.
The record does not support a finding that both plaintiffs were contributorily negligent, since there was no evidence of any act of negligence by either driver other than red light violation, which can be attributed to only one driver.
Therefore, to dismiss both petitions, the trial judge must have concluded that neither party supported his claim that the other ran a red light by a preponderance of the evidence. In other words, he called a tie in weighing the evidence on the red light violation. We believe that, in doing so, the trial judge committed an error of law in this particular case.
In Nelson v. Zurich Ins. Co., 247 La. 438, 172 So.2d 70 (1965), a suit by a guest passenger against two drivers whose opposing versions of the accident were irreconcilable, the Supreme Court observed:
“Where witnesses differ, the courts should reconcile, if possible, the apparent contradictions their testimony presents. If this cannot be done, then the probabilities or improbabilities of their respective statements must be considered in the light of their capacity, opportunity or incentive for observation, the amount of corroboration, if any, and the degree of proof required.” at 72.
This rule has been followed in subsequent cases in which the trial judge declined to discharge his “duty to reconcile”. See Brown v. Southern Farm Bureau Casualty Ins. Co., 248 La. 943, 183 So.2d 313 (1966). However, these and other cases decided under the principle involved circumstances where a third party free from negligence proved that he was injured because of the negligence of one or both defendants. Once the third party proved that he should recover under either version of the accident presented by the defendants, the trial judge was charged with a duty of reconciling the opposing versions so as to permit recovery against either or both defendants. See Benjamin v. Pizzalato, 245 So.2d 740 (La.App. 4 Cir. 1971).
In theory, this “duty to reconcile” does not extend to a contest between the two drivers only, since there is no innocent third party who must recover under either version. Likewise, there can be concurrent negligence barring recovery by either driver. But in a case such as the present one, where the record reveals only one act of negligence which could be committed by only one driver, the trial court should resolve the determinative issue of fact in favor of one or the other litigant. The function of the trial court is to resolve disputes, even if the resolution is difficult.
In a case where both litigants present evidence on the same point, the decision on that point must favor one or the other, unless the evidence is exactly equal. When both sides present considerable evidence (as here), it is not practical and only remotely possible to accord exactly equal weight to the evidence on each side.
We therefore proceed to resolve, on the record before us, the determinative factual point in this case.
Klock presented the following witnesses:
Marshall Miller, an insurance adjuster and auxiliary policeman was driving north on Jackson Avenue. He saw the *421 traffic light turn red when he was li/¿ blocks from the intersection in question. He also saw the police car approaching the intersection from the opposite direction with flashing lights. Because his windows were raised and his air conditioning on, he could only faintly hear a siren. The police car slowed at the intersection, but entered on a red light, and was struck in the left center by Klock’s car. The police car traveled about a half block after the impact. Miller denied that any cars were traveling on Jackson Avenue between him and the intersection.
Charlie Burgess, whose stopped car Klock passed on the right, was waiting at the traffic light, but because he was talking did not notice when it turned to green. When Klock passed him, he noticed the police car, but didn’t recall a siren or flashing lights. The police car was traveling fast and entered the intersection when the light was green for Prytania Street traffic.
C. J. Jenkins, a passenger in the Burgess vehicle, saw the speeding police car enter the intersection when the light was green for Prytania Street. He was uncertain in his answers to other relevant questions.
Tucker M. Dickson, traveling east on Prytania Street, stopped at the intersection for a red light. When the light changed, he crossed the intersection and turned left onto Jackson Avenue. As he began to travel on Jackson, he noticed the police car with the motor accelerating, but without flashing lights or a siren. He had traveled about 100 feet on Jackson Avnue when he heard the collision. He did not remember any other cars on Jackson Avenue or the Burgess car stopped on Prytania Street.
On the other hand, Eskridge produced the following witnesses:
Richard Martin, a police lieutenant, was driving north on Jackson Avenue. When he was about a half block from the intersection (which would have been in front of Miller), he noticed the flashing light and heard the siren. He saw the police car enter the intersection on the green light and heard the crash. He also saw two people get out of the Klock car (Klock claims he was alone).
The testimony of Mrs. Martin, a passenger in her husband’s vehicle, was substantially the same at that of her husband.
The testimony of the investigating officer contributed nothing to the determination of the pertinent facts.
After evaluating all of the testimony, we believe that the evidence on the red light violation preponderates in favor of Klock. Just before the collision, Dickson moved from a stopped position at the intersection because the light changed to green for traffic on Prytania Street, and he therefore had more reason to be conscious of the light change. His movement was not interrupted and was completed prior to Klock’s entry into the intersection.
Although the testimony of Burgess and Jenkins was confusing, they were sure that Klock entered the intersection on the green light, and being the witnesses closest to the point of impact, they were in a superior vantage point to observe the signal light. Miller was an impressive witness who was acquainted with the important details of accident investigation. He testified in a straight forward manner, although he handled some claims for the insurance company Klock was suing.
Eskridge’s testimony was corroborated only by Mr. and Mrs. Martin. While there was no reason to discredit their testimony, it was not sufficient to overcome and outweigh that presented by Klock.
The amount of Klock’s property damage was stipulated at $519.87.
Accordingly, the judgment of the trial court is reversed, and judgment rendered against Travelers Insurance Company, the City of New Orleans and Donald A. Eskridge, Jr. and in favor of United *422 Services Automobile Association in the amount of $419.87 and William F. Klock in the amount of $100.00, together with legal interest from the day of judicial demand until paid and all costs.
Reversed and rendered.