702 So.2d 1068 (1997)
Christine R. CHARGOIS, Individually and on Behalf of Her Minor Son, Quentin Chargois
v.
Michael L. GUILLORY, and Allstate Insurance Company.
Trennis T. CHARGOIS
v.
Michael L. GUILLORY, and Allstate Insurance Company.
Nos. 97-439, 97-440.
Court of Appeal of Louisiana, Third Circuit.
October 29, 1997.
*1069 Bryan Forrest Gill, Jr., Lake Charles, for Christine R. Chargois, etc.
Maurice L. Tynes, Lake Charles, for Michael L. Guillory, et al.
Before YELVERTON, COOKS and GREMILLION, JJ.
COOKS, Judge.
Plaintiffs filed a negligence action seeking damages for property loss and personal injuries. The trial court found neither plaintiffs nor defendants/plaintiffs-in-reconvention met their burdens of proving the other party's negligence by a preponderance of the evidence. The trial court decision not to allow evidence of Allstate's alleged bad faith is further designated as erroneous. We find the trial court manifestly erred and reverse the judgment in entirety.

FACTS
On January 25, 1996, Trennis Chargois filed claims against Michael Guillory and Allstate Insurance Company stemming from an automobile accident which occurred on April 30, 1995. Chargois sought recovery for damages to himself and his car, as well as penal damages for Allstate's alleged breach of the duties imposed by La.R.S. 22:657, 22:658, and 22:1220 to adjust claims fairly and promptly and to take reasonable steps to settle valid claims. Plaintiff further asserted violations of La.R.S. 22:1214, which prohibits unfair trade practices. Christine Chargois, also filed suit on behalf of herself and her son (Quentin) asserting essentially the same claims raised by Mr. Chargois, except she did not sustain property loss.
Guillory and his insurer, Allstate Insurance Company, reconvened seeking recovery for damage caused to Guillory's automobile. They also filed a third-party action against Colonial County Mutual Insurance Company, which shortly before the accident issued a policy covering Trennis Chargois. However, Trennis' Colonial policy was not effective on the date of his collision with Guillory. The plaintiffs' claims were consolidated for trial, along with the reconventional claims filed by Allstate and Guillory.
Following submission of Chargois' witnesses, the trial court granted the defense's motion to defer any further introduction of evidence regarding Allstate's alleged bad faith or unreasonable offers to settle Chargois' claims. The court, however, allowed the record to remain open for Chargois' later proffer of evidence on this issue. Despite its ruling, the court did not permit Chargois to present further evidence of Allstate's alleged violation of insurance code. The court concluded neither plaintiff nor defendant/plaintiff-in-reconvention sustained their burden of proof and dismissed both actions. Chargois designates as error the trial court's ruling that neither party proved their case by a preponderance of the evidence; and further submits that the trial court erred by not allowing him full opportunity to prove Allstate's bad faith.

Did either side meet its Burden of Proof?
In vehicular collision disputes such as this, both parties have the burden of proving their cases by a preponderance of the evidence. If either litigant fails to satisfy his burden, "he necessarily loses." Miller v. Leonard, 588 So.2d 79, 81 (La.1991), on remand, 607 So.2d 737 (La.App. 1 Cir.1992); Smith v. State, Through Dep't of Health and Hospitals, 94-871 (La.App. 3 Cir. 4/15/95), 650 So.2d 450, writ denied, 95-0693 (La.4/28/95), 653 So.2d 596. In Miller, the supreme court further recognized "[w]here the evidence is truly in equipoise and neither of the opposing plaintiffs satisfies the burden of proof," the trial court may dismiss both suits. Id. at 83. Thus, the central issue presented on appeal is whether the trial court manifestly erred in finding neither side proved the other's negligence.
At trial, Trennis testified he and Quentin (seated in the front) and Corey and Torey Locks (seated in the back) were traveling east on Broad Street in his car when he made a left turn proceeding northbound on Enterprise Boulevard. Chargois stated the light was green for some time before his vehicle collided with Guillory's at the intersection of Mill Street. He also testified Guillory stopped after proceeding southbound on Enterprise, then pulled into his lane of traffic, *1070 slowed to a near stop, and after apparently seeing the Chargois vehicle, attempted to accelerate through the intersection in order to avoid the wreck. Lake Charles Police Officer Chris Morrow testified, on the night of the incident, Guillory told him he (Guillory) was proceeding southbound on Enterprise Boulevard when he turned left onto Mill Street in front of Chargois' oncoming car. Morrow further stated Guillory's original version of the story was corroborated by Chargois and confirmed by his own investigation of the scene. The officer also testified that several days later Guillory contacted him, claiming he actually was proceeding straight on Mill Street, across Enterprise, and was not turning off of Enterprise. This story, Morrow indicated, contradicted Guillory's original account related the night of the accident.
Corey Locks, one of Chargois' passengers, when asked to describe the events preceding the accident, stated:
A. I remember riding down____going down the street; and I'm not for sure, but a truck came from the side, like he was cutting in front of us.
Q. A truck cut in front of you?
A. Yeah.
Q. What were you doing before the accident happened? Where were you looking?
A. I was just looking straight ahead.
* * * * * *
Q. Did you have any indication that an accident was about to happen until that truck pulled in front of you?
A. No, it happened so quick.
Q. Okay. Could you tell what direction the truck came from?
A. I'm not for sure, but I think it was coming from the other side of the____ like, (indicating), coming back down (indicating), like towards the other____ I can't really explain it, but kind of like (indicating).
* * * * * *
Chargois alleged in Paragraph 4 of his "Petition for Damages":
4.
Defendant, MICHAEL L. GUILLORY, was negligent in the following non-exclusive particulars:
1. Failure to see what he should have seen;
2. Failure to yield to oncoming traffic;
3. Failure to observe and obey traffic signals and signs;
4. Driving at excessive speed under the circumstances;
5. Failure to maintain control his vehicle; (sic)
6. Other acts of negligence which will be proved at the trial of this matter, all resulting in injuries to your Petitioner.
The record reflects Chargois presented sufficient prima facie proof of Guillory's negligence. The evidence minimally establishes the "essential allegations of the petition." Savic v. Assurance Co. of Am., 509 So.2d 460, 462 (La.App. 3 Cir.1987); see also Holmes v. Rachal, 525 So.2d 59 (La.App. 3 Cir.1988); and Perrodin v. Zander, 441 So.2d 12 (La.App. 3 Cir.1983). However, our inquiry does not end here. Having determined that Chargois met his initial burden of proof, we must turn to consider whether Chargois' prima facie evidence was sufficiently rebutted by defendant or whether Guillory sufficiently supported his reconventional demand, such that the evidence as a whole was truly in equipoise.
Counsel for Guillory and Allstate attacked Chargois' testimony by attempting to show the trees on Enterprise Boulevard would have blocked his line of vision, preventing him from seeing the traffic light color for a significant distance prior to his entering the intersection. While Chargois admitted "[t]here are some limbs" in the area, nothing in the record suggests he could not see the green light in his favor for a sufficient period prior to entering the intersection. Chase, Allstate's insurance adjuster, drives that same route to and from church every Sunday and testified the green light could not be seen all the way to Mill Street because of the foliage obstruction. However, the defense was not able to definitively establish the extent *1071 to which such foliage, assuming it existed, obstructed plaintiff's view of the light on the day of the accident.
Wallace Toussaint, who the trial judge referred to as "the so-called prima facie disinterested witness," took the stand on behalf of Guillory. Toussaint testified he stepped off a curb on the northeast corner of the intersection crossing Mill Street when he noticed Guillory's headlights. The gist of Toussaint's account was that Guillory could not have turned left after traveling south on Enterprise Boulevard based on the direction of the headlights. Toussaint also claims he saw Chargois' car hit Guillory's vehicle. Joseph LaVergne, Guillory's passenger, testifying for the defense stated:
Q. Would you tell the Court what you were able to see as to how the accident happened and what you experienced in the accident?
A. We was coming across the intersection. We was headed to a wake, first of all.
* * * * * *
A. Right. We were headed straight across. The light was green, and we just went across it. We got to the other side, I said, watch it. That's what I told Mike, and that's when we got hit.
LaVergne indicated that Chargois could not have seen Guillory's vehicle because LaVergne had difficulty seeing Chargois' vehicle because vehicles were parked in the median at, or near, the accident site. Chargois points out, however, "[b]ecause Mr. LaVergne did not notice Mr. Chargois' vehicle until an instant prior to the collision does not mean that [he] didn't notice [Guillory's car]."
The function of the trial court is to resolve disputes, even if the resolution is difficult. See Melancon v. Harrell, 423 So.2d 62 (La.App. 1 Cir.1982) citing United Services Auto. Ass'n v. Travelers Ins. Co., 255 So.2d 418 (La.App. 4 Cir.1971). Furthermore, "in a case where both litigants present evidence on the same point, the decision on that point must favor one or the other, unless the evidence is exactly equal. [Emphasis ours]. Melancon, 423 So.2d at 64, United Services, 255 So.2d at 420. In United Services, the owners of each car involved in an intersectional collision filed separate actions. The lawsuits were consolidated for trial on the merits, after which the trial court dismissed both suits. As in this case, there was "an instance of two parties claiming to have entered an intersection on a favorable light at the same time," which was "an impossible situation." United Services at 420. There was testimony from an insurance adjuster, the investigating officer, the parties, their passengers, and "disinterested witnesses." Id. The appellate court admitted that "[t]heir testimony was in hopeless conflict;" but, found manifest error in the trial court's conclusion that "neither party supported his claim that the other ran a red light by a preponderance of the evidence." Id. In support of its reversal of the trial court, the Fourth Circuit relied upon Nelson v. Zurich, 247 La. 438, 172 So.2d 70, 72 (1965), which held, in material part:
Where witnesses differ, the courts should reconcile, if possible, the apparent contradiction their testimony presents. If this cannot be done, then the probabilities or improbabilities of their respective statements must be considered in the light of their capacity, opportunity or incentive for observation, the amount of corroboration if any, and the degree of proof required.
While we are mindful of the Supreme Court's holding in Miller, "it is not practical and only remotely possible to accord exactly equal weight to the evidence on each side." United Services at 420. Examination of the record in this case convinces us the trial judge did not fully discharge his "duty to reconcile," and, therefore manifestly erred. Id. citing Brown v. Southern Farm Bureau Cas. Ins. Co., 248 La. 943, 183 So.2d 313 (1966).
Resolution of this matter certainly proved a difficult undertaking in light of the contradicting and, sometimes, incredible testimony. The trial judge, in his oral reasons for judgment, stated "every time I try to analyze the evidence in this case ... every plus seems to be a minus." Yet in his oral reasons for judgment, the judge did not pinpoint exactly what evidence he considered constituted "a minus" in Chargois' case. He *1072 does not mention the testimony of Officer Morrow, who is both competent and disinterested. Instead, he merely insinuates plaintiff's evidence was not credible because Chargois and his passengers were the only eyewitnesses who testified for plaintiff's case in chief. It is well settled, however, when "evaluating the evidence, the Court should accept as true the uncontradicted testimony of a witness, even though the witness is a party, at least in the absence of circumstances casting suspicion on the reliability of this testimony." Fourroux v. North-West Ins. Co., 462 So.2d 1327, 1329 (La.App. 3 Cir.), writ denied, 465 So.2d 739 (La.1985). (See also Farley v. Ryan Stevedoring Co., Inc., 117 So.2d 587, 238 La. 1048, where the supreme court held "courts will not impute perjury to apparently credible witnesses, particularly in the absence of any evidence indicating that such is unreliable."). The fact that Chargois and his passengers testified on his behalf is not enough, standing alone, to discredit their testimony. Moreover, the record evidence does not discredit Officer Morrow's testimony. Guillory did not rebut Chargois' evidence sufficiently or establish his case in reconvention to such extent that the evidence as a whole balanced equally on the scales of justice. On the other hand, we are satisfied Chargois' evidence, though close, outweighed that presented by the defense and the plaintiffs-in-reconvention.

Should Chargois have been allowed to Present Evidence of Bad Faith?
Chargois also objects to the trial court's forbidding further testimony concerning Allstate's alleged failure to fairly adjust and settle his claim. We find this assignment also has merit. In his petition, plaintiff alleged Allstate "breached its duties under La. R.S. 22:1220, 22:657, 22:658, and 22:1214." While the limited causes of action provided in favor of third party claimants by La. R.S. 22:1220, as articulated recently by the Louisiana Supreme Court, do not provide firm basis for plaintiff's penalty allegations, La. R.S. 22:657, La. R.S. 22:658 and La. R.S. 22:1214 provides additional grounds upon which third parties might successfully present such a claim. Theriot v. Midland Risk Ins. Co., 95-2895 (La.5/20/97), 694 So.2d 184. However, the trial court's ruling prevented Chargois from fully presenting his companion bad faith claim for penalties and attorney's fees and aborted Allstate's opportunity to defend.
Ms. Sheila Chase testified as follows:
Q. I understand that you're denying liability in this case; and what do you base that on? Do you base it on the conflicting stories? Or at the time that you denied liability, did you base that on the conflicting stories between Mr. Chargois and Mr. Guillory?
A. There were conflicting stories, Mr. Guillory indicated to me, from the witnesses from the police report that the witness stated that Mr. Guillory was indeed traveling on Mill Street and had a green light.
Q. But the accident report that you saw does not indicate that Mr. Toussaint went into the police department and told Officer Morrow that, in fact, that's what occurred. It doesn't indicate that does it?
A. I'm not sure what it indicates.
Chase further testified she never spoke with Officer Morrow to find out his version of what happened. When plaintiff's counsel questioned Chase about Allstate's settlement recommendations, the court, in response to a defense objection, decided to disallow further questioning on Allstate's internal policy.
The trial court erred in not allowing further evidence on the issue. Plaintiff might have been able to establish a claim for penalties against Allstate on grounds other than those mentioned in La. R.S. 22:1220.

DECREE
For the foregoing reasons, we reverse the trial court's judgment dismissing plaintiff/appellant's claim. The Chargois' case is therefore remanded for a determination of the amount of damages owed by defendant/appellees and for further proceeding to determine whether Allstate violated La.R.S. 22:658 and 22:1214. The trial court's judgment dismissing defendant/appellee's reconventional demand is affirmed.
*1073 AFFIRMED IN PART; REVERSED AND REMANDED IN PART.