172 So.2d 70

**Joe NELSON**

v.

**ZURICH INSURANCE COMPANY et al.**

No. 47424.

Feb. 23, 1965.

Peters, Tuck & Ward, Shreveport, for plaintiff-applicant.

Bodenheimer, Looney & Jones, G. M. Bodenheimer, Jr., Meyer & Smith, Shreveport, for defendants-respondents.

FOURNET, Chief Justice.

This suit was instituted by the plaintiff, Joe Nelson, to recover damages for personal injuries sustained as a result of an intersectional collision at Pierremont Avenue and Gilbert Street in the City of Shreveport between a 1957 Plymouth automobile, in which he was a guest passenger, and a 1958 Dodge three-ton truck, making defendants his host driver, Arthur Branch, and his liability insurer, New Hampshire Insurance Company, and also the driver of the truck, L. D. Malone, the owner of the truck, Waldrip Tire & Supply Company, Inc., and its liability insurer, Zurich Insurance Company. The matter is now before us on a writ of certiorari granted on the application of the plaintiff to review the judgment of

the Court of Appeal, Second Circuit, affirming the judgment of the district court rejecting the plaintiff's demands. See, La. App., 165 So.2d 489.

The Court of Appeal stated, in which we are in full accord: "There can be no dispute as to the conclusion that this accident was the direct result of negligence of one of the two drivers in entering the intersection on a red light or by the negligence of one, or both, of the drivers in failing to maintain a proper lookout and have his vehicle under such control as would permit him to anticipate and avoid a collision." However, the Court of Appeal, as did the trial judge, rejected plaintiff's demands, being of the opinion that the plaintiff had failed to prove his case by a preponderance of the evidence as they concluded it was impossible to decide which of the two drivers was negligent because of the irreconcilable conflict in the testimony of the witnesses who stated that the Plymouth car was favored by a green light and those who testified that the truck had this advantage.

Counsel for plaintiff maintain the courts below, having concluded the plaintiff was free from negligence and had sustained the injuries complained of as a direct result of the negligence of one or both of the drivers, had a duty to choose between the conflicting versions and to decide the case according to the applicable legal principles that have been developed to deal with such situations; and

if unable to do so, the plaintiff, having proven the accident could not have happened but for the negligence of one or both of the drivers of the two vehicles, made a prima facie case of negligence and the burden then shifted to each driver to exculpate himself from negligence and each must be deemed guilty of negligence per se in the absence of any proof to the contrary.

The undisputed facts of the case are that the accident occurred about 8:00 a. m. on July 28, 1962, a day when the weather was clear and dry. There was no obstruction to visibility at the aforementioned intersection where traffic was controlled by an overhanging semaphore light. Branch, accompanied by the plaintiff, en route to visit his brother, was driving in a southerly direction on Gilbert Street, a hard-surfaced two-lane roadway 25 feet 10 inches wide, and after he passed the center of the south lane of Pierremont Avenue, a four-lane hard-surfaced thoroughfare measuring 41 feet in width, the right side of his car was struck broadside by the left front of the truck loaded with twenty head of cattle which was being driven easterly on Pierremont Avenue, knocking the car sideways for a distance of 40 feet 7 inches before it came to rest on the sidewalk neutral ground at the southeast corner of the intersection; the force of the impact threw the plaintiff from the car, rendering him unconscious. Near this same corner the truck was turned over on its left side, headed southwest.

Defendant Branch appeared on behalf of the plaintiff[1] and testified that he was going at a rate of approximately 15 miles per hour on Gilbert Street and upon approaching its intersection with Pierremont Avenue, stopped in obedience to the red traffic light about 12 feet from the pedestrian line. He looked to both right and left and to his right saw the truck "away up there, coming" and when the light turned to green, "the truck was a pretty good distance" and he "eased on across," estimating his speed to be about 10 miles per hour. However, when his car had preempted the center of the intersection, he noticed the truck was not going to stop but was "coming so fast" as to make a collision inevitable and his car was struck about the center of the south lane of Pierremont Avenue. After being questioned by police officers, he was taken to Sanders Clinic by a man named William Moore.

Moore, as a witness for plaintiff, testified that he was driving on Gilbert Street. As he approached its intersection with Pierremont Avenue, he stopped behind the Branch vehicle which had stopped for the red light and after the light had turned to green, the car ahead of him started across slowly and he followed until he noticed the truck which was then about 50 feet away, approaching at a rapid rate of speed, which he estimated to be about 50 miles per hour, or more, in fact "it was too fast to stop" when the Branch car was "just getting across that center line in the highway."

As opposed to this version of the accident, we have the testimony of L. D. Malone, Jessie Turel, and Johnny Lee Harper, employees of the insured who occupied the cab of the truck. Malone related he was driving the truck,[2] transporting the cattle to be auctioned, for his employer, traveling easterly in the middle traffic lane on Pierremont Avenue at the rate of approximately 30 miles per hour until reaching the crest of a hill, which he estimated to be approximately 200 feet from the intersection with Gilbert Street, when he noticed the traffic light there was red, and after advancing to about 150 feet of the intersection, the light changed to green, at which time he was coasting at a speed of about 20 miles per hour. As he started to accelerate his speed, about 50 feet removed from the intersection—he saw the Plymouth car for the first time—describing the accident thusly: "This car came out into this intersection and it acted as if it was going to stop in the middle of the street," whereupon he "swerved to the right

1. Plaintiff testified that he was rendered unconscious by the force of the impact and remembered nothing about the accident except that when he regained consciousness he was in the hospital. He did, however, offer several witnesses.

2. Malone further said his companions, at the time of the accident, resided with him on property belonging to their employer; that they were related to him, describing Harper as one who "has kids by my sister" and naming Turel as his brother.

to miss him" and applied his brakes, further stating, "they took off again and I hit it."

Harper, who sat next to the door in the truck, testified that as they reached the crest of the hill, the light at the intersection of Gilbert and Pierremont was red, but changed to green when they were about 100 feet from the intersection, when Malone "started to go ahead on," and after advancing to about 50 feet from the intersection, he saw Branch's car which "got in the middle of the street and acted as if it was going to stop, and then L. D. (Malone) hit his brakes and pulled to the side," estimating the car was 50 feet away at the time Malone applied his brakes.

Turel, who was sitting in the center, testified he could not tell how far they were from the intersection when they reached the crest of the hill as he "can't see too good any time," but did notice that the light was red and Malone started to slow down. The light then turned to green when he noticed the car "was setting directly up underneath the light" and "all at once L. D. (Malone) jugged on his brakes and made a pull-over to the right" and struck the car "right in the right side."

■ From the foregoing, it is obvious that the opposed versions are irreconcilable,

hence we must resort to the application of the well recognized rule that: "Where witnesses differ, the courts should reconcile, if possible, the apparent contradictions their testimony presents. If this cannot be done, then the probabilities or improbabilities of their respective statements must be considered in the light of their capacity, opportunity or incentive for observation, the amount of corroboration, if any, and the degree of proof required." Fridge v. Talbert, 180 La. 937, 158 So. 209. See also, Cockrell v. Penrod Drilling Company, 214 La. 951, 39 So. 429; Fogelman v. Interurban Transp. Co., 192 La. 115, 187 So. 73. In the Fridge case, the court very aptly observed: "The testimony of a witness which is corroborated by admitted or established facts must prevail necessarily over that which is inconsistent with those facts."

■■ From our appreciation of the evidence, analyzed in the light of the foregoing rule, we think the account of the accident as related by plaintiff's witness Branch [3] is reasonable and logical. His testimony is not only positive and convincing, but is fully corroborated by that of Moore, a totally disinterested witness. We are convinced that the sole and proximate cause of the accident was the failure of Malone, the

---

3. Inasmuch as Branch sued for damages suffered as a result of this same accident, his case was consolidated for trial with that of the plaintiff herein; it may be said he had an interest in the outcome of the case at bar, however, this does not necessarily discredit his testimony, as shown by the circumstances of this case. R.C.C. Art. 2282.

driver of the truck, to maintain a proper lookout and to have his vehicle under proper control. While it is true that in giving his testimony, he related, as did the other two occupants of the truck, that they were favored with a green light when the accident happened, their testimony as a whole is most unimpressive. In analyzing it, we find in some respects it is not only at variance with other, but corroborates the version of the plaintiff's witnesses in many material aspects.

Although their view was unobstructed, none of these witnesses testified that Branch did not stop upon reaching the intersection. Malone stated he was driving in the middle lane of Pierremont Avenue at a speed of 20 miles per hour when the light changed to green when they were 150 feet removed from the intersection; Harper estimated the distance to be about 100 feet. Malone said the first time he saw the car it was entering the intersection, and he was 50 feet away therefrom. On the other hand, Harper said when the truck had reached that same distance—50 feet from the intersection—the Plymouth car was in the middle of the intersection. Turel, who could not estimate distance because of poor eyesight, did state when he first saw the car it "was setting up underneath the light."

Thus we see Harper's testimony not only varies with that of Malone but supports Branch's statement that after he preempted the center of Pierremont Avenue, Malone was advancing at such a speed that it was impossible for him to stop in time to avoid the collision. While Turel stated he could not estimate the distance from the intersection, his explanation that when he first saw the car it "was setting directly up underneath the light", when "all at once L. D. (Malone) jugged on his brakes and made a pull-over to the right" and struck the car "right in the right side", fully supports the foregoing conclusion. Moreover, this conclusion is fully corroborated by the disinterested witness Moore who stated that when he first noticed the truck, it was about 50 feet from the intersection traveling at a rapid rate of speed, which he estimated to be 50 miles per hour or more, in fact, "too fast to stop," when the Branch car "was just getting across that center line in the highway."

The argument of counsel for Zurich Insurance Company that Moore's testimony should be disregarded because the police officer testified that in his quest for eye witnesses at the scene of the accident, he did not see Moore, does not in our opinion have any effect upon the credibility of Moore's testimony.

In arriving at the views hereinabove expressed, we have given consideration to all inconsistencies in the testimony of the several witnesses in the case, including those who appeared on behalf of the plaintiff, discuss-

ing those we thought were material to the decision and omitted any mention of the many minor conflicting statements of the witnesses that were not pertinent and might tend to confuse the issues.

Counsel for plaintiff, both orally and in brief, request that, inasmuch as the record is complete as to the extent of plaintiff's injuries, we fix the amount of damages he is entitled to. While this court has full appellate jurisdiction of this case as though it were here on appeal,[4] we cannot comply with this request before that issue has been adjudicated by the court below; the case will therefore be remanded to the trial court for that purpose.

For the reasons assigned, the judgments of the district court and of the Court of Appeal, Second Circuit, insofar as they dismissed the plaintiff's suit against L. D. Malone, Waldrip Tire & Supply Company, and Zurich Insurance Company, are reversed and the case is remanded to the First Judicial District Court for the Parish of Caddo in order that it may fix the quantum of damages that plaintiff is entitled to receive as a result of the injuries suffered, and to render judgment for such sum in favor of the plaintiff, Joe Nelson, against the defendants L. D. Malone, Waldrip Tire & Supply Company, and Zurich Insurance Company, in solido. All costs are to be borne by these defendants.

4. Art. 7, Sec. 11, Const. of Louisiana, 1921.