AYRES, Judge.
This is an action in tort wherein plaintiffs, husband and wife, seek to recover of the defendants damages allegedly sustained in an intersectional motor vehicle collision, and wherein the defendants reconvened for damages allegedly sustained by them.
Negligence primarily charged by both plaintiffs and defendants is that the other vehicle entered the intersection upon an unfavorable signal and thereby precipitated the accident. The trial court concluded that neither plaintiff nor defendant established, to that degree of certainty required by law, which driver proceeded into the intersection upon an unfavorable light. From a judgment accordingly rejecting their demands, both plaintiffs and defendants prosecute appeals to this court.
The accident occurred May 7, 1966, at the intersection of Common and Crockett Streets in the City of Shreveport. The former is a 2-way 4-lane thoroughfare, two lanes for each direction, pursuing a general north and south course. The traveled portion of the latter is a 3-lane 1-way westbound thoroughfare. The movement of traffic through the intersection is governed by electric signals posted at each of its four corners.
Involved were a Buick automobile driven in a northerly direction on Common Street by Dr. S. D. Carrington, who was accompanied by his wife and two minor children, and a Ford automobile owned and operated at the time by defendant A. B. King, who was proceeding in a westerly direction on Crockett Street. Carrington was occupying the inner northbound traffic lane of Common Street; King, the middle lane on Crockett Street. Neither of the cars may be said to have been operated at an excessive speed. The accident occurred slightly, to the east of the center of the intersection, that is, at the point where the traffic lanes occupied by the two motorists cross. The right front of the Buick and the left front of the Ford were the focal points of the impact. The Buick skidded 10 *449 feet before colliding with the Ford, after which both vehicles proceeded toward the northwest corner of the intersection. The Buick came to rest in that corner, 36 feet from the point of the collision, facing westerly. The Ford traveled a distance of 44 feet after the collision and came to rest partially over the curb, likewise facing in a westerly direction.
The testimony on the crucial issue as to who ran the red light is 'conflicting. Dr. and Mrs. Carrington testified that from a distance of at least a half block and continuing until they entered the intersection the signal was favorable for their continuance into and through the intersection. The defendant was as positive in his testimony that he entered the intersection on a green light. His testimony is that, as he proceeded westerly on Crockett Street, the light was red until he was within a distance of approximately 15-20 feet from the intersection when the signal turned green, whereupon he continued into the intersection.
Defendants contend that the testimony of Robin Brobst. and Gwin Drummond supports their driver’s version of the occurrence. Brobst testified he was walking on Crockett Street about a block away from the scene of the accident intending to cross the street when he heard the impact of the collision. He testified that upon hearing this impact he looked up the' street and the first thing he noticed was that the dust was flying everywhere, almost as high as the telephone poles; that he saw one of the cars sliding across the intersection into the corner near the traffic signal and that, as the car came to rest, he noticed the traffic signal was green for traffic on Crockett Street. “This,” he said, “was a period of just a few seconds after the impact, long enough for the car to slide across the intersection.”
Drummond testified that he was also traveling west on Crockett Street; that defendant King passed him shortly before the accident and that he, Drummond, was about a -half block behind King when he saw King’s vehicle some 5-10 yards from the intersection. Drummond said that at that time the traffic signal for traffic on Crockett Street was red. Drummond’s attention was, however, diverted from the traffic signal and he did not again observe it until after the vehicles had come to rest, at which time the signal had changed to green for traffic on Crockett Street.
It appears quite obvious that testimony as to the color of a traffic signal at the time vehicles involved in a collision come to rest constitutes no positive indication as to the status of the signal at the precise time of or immediately preceding a collision. Changes are effected within a mere moment of time.
In a comparable situation it was pointed out by the Supreme Court in Nelson v. Zurich Insurance Company, 247 La. 438, 172 So.2d 70 (1965), that where witnesses differ the courts should reconcile, if possible, apparent contradictions and, if this cannot be done, the probabilities or improbabilities of their respective statements must be considered in the light of their capacity, opportunity, or incentive for observation, the amount of corroboration, if any, and the degree of proof required.
From the testimony to which we have referred, it is obvious that the opposed versions are irreconcilable and hence we must resort to the application of the above-stated well-recognized rule.
From our appreciation of the evidence analyzed in the light of this rule, we think the account of the accident as related by plaintiffs is ■ reasonable and logical. Dr. and Mrs. Carrington, as heretofore noted, testified emphatically that they had a favorable traffic signal when their vehicle entered the intersection; moreover, that they had observed this favorable light for some distance before reaching the intersection while traveling at a speed of 20-25 m. p. h. Their credibility as witnesses is unassailed.
*450 The testimony of defendant King is unimpressive. According to his own statements, he proceeded in the face of an unfavorable signal without slackening his speed or demonstrating any intention to stop. He never decelerated his car or applied his brakes, apparently trusting in a change of signals to one favorable to him and without observing traffic conditions in the intersection.
In weighing the testimony in the light of the witnesses’ capacity, opportunity, and incentive for observation, plaintiffs’ version of the occurrence is established by a reasonable preponderance of the evidence, and the conclusion necessarily follows that the accident was occasioned by defendant King’s lack of proper observation in entering the intersection upon an unfavorable traffic signal.
By the force of the impact of the collision plaintiffs sustained painful injuries as their car spun around counterclockwise before coming to rest some 36 feet away. Both were conveyed to a local hospital. Dr. Car-rington, momentarily stunned, received what was termed a moderate whiplash type injury involving primarily his neck and left shoulder. His head was lacerated and bled profusely. Muscle relaxants and analgesics were administered and heat was applied. Not having responded successfully to his own treatment, Dr. Carrington saw Dr. T. A. Norris, an orthopedist, June 7, 1966. The lacerations on his forehead and scalp were noted as was one on his left upper arm. Tenderness was noted on both sides of his neck as was tenderness over each occipital nerve under the base of his skull. Neck motion was limited within a comfortable range of about 30 degres in turning to the right and 60 degrees in the opposite direction, or one-third of normal on one side to two-thirds on the other. Upward, backward, and ' forward extension was limited to about one-third of normal. Dr. Carrington testified that he had suffered moderate to severe pain which he still found uncomfortable and annoying even at the time of the trial seven months after the accident.
Mrs. Carrington received painful injuries to her right leg and a broken bone in her right foot. She was incapacitated for several weeks and suffered discomfort for a considerable period. Her injuries were accompanied by swelling in the upper part of her leg as well as in her foot which persisted for some three or four weeks. Her suffering was described as severe at first but was gradually reduced to moderate and then finally to mild. Discomfort was shown to have occasionally recurred to the trial of the case. She was also examined by Dr. Norris June 7, 1966, who prescribed analgesics and heat for relief.
While it must be admitted that plaintiffs sustained painful injuries and that suffering, discomfort, and inconvenience were endured, these, we think, had almost subsided at the time of trial. For these, we are of the opinion that an award of $1,500.00 for each of the pláintiffs is adequate. Plaintiff Dr. S. D. Carrington should, however, recover special damages in the sum of $517.05.
For the reasons assigned, the judgment appealed is avoided, annulled, reversed, and set aside; and
There is now judgment in favor of plaintiff Dr. S. D. Carrington in the sum of $2,-017.05 and in favor of Mrs. Aline E. Car-rington in the sum of $1,500.00 against the defendants, A. B. King and New York Fire and Marine Underwriters, Inc., in solido, with legal interest from judicial demand until paid, and for all costs including an expert-witness fee for Dr. T. A. Norris in the sum of $100.00.
Reversed and rendered.