BARHAM, J.
This is a suit for workmen’s compensation alleging total and permanent disability as the result of an injury to plain *860 tiff’s back when she slipped and fell on December 20, 1961. The case was originally tried in the district court in April of 1965, and upon appeal was remanded by this Court, 181 So.2d 464, for “ * * * the introduction of relevant medical evidence presented by either side disclosing the connexity, if any, between the employment accident and the herniated disc removed by Dr. King on August 25, 1965.”
The remand was occasioned by the filing of an affidavit that Dr. King, an orthopedic surgeon, had removed a ruptured disc on August 25, 1965, while the case was pending on trial. Upon remand, and after receiving further evidence, the trial court, without assigning written reasons, found the plaintiff to be totally and permanently disabled, and defendant has filed this appeal.
While employed as a saleswoman by the Reese Variety Stores, Inc. in Shreveport, plaintiff slipped and fell to the floor, coming to rest heavily upon the coccyx. Defendant had paid 63 weeks of compensation prior to institution of suit and it is not contested that plaintiff received an injury. The question before this Court is whether or not the evidence as a whole, and particularly the eventual removal of a degenerated disc almost four years after the accident, supports a causal connection between the accident and the ensuing and continuing complaints of disability. A quote from the original decree by this Court will summarize the medical testimony prior to remand, to-wit:
“However, upon a most careful review of the record we find a constant and continuous record of visitations for professional advice and treatment to a back condition from the date of the accident to the operation on August 25, 1965 by Dr. King. Thus plaintiff was treated by Dr. Harold C. Bicknell, orthopedist, from December 28, 1961 through October 3, 1962; by Dr. Joseph L. Ewing, urologist, on some four occasions in 1962 and 1963; by Dr. Edwin C. Simonton, Jr., orthopedist, from October 19, 1962 through March 29, 1965; and by Dr. Frederick C. Boykin, neurosurgeon, from March, 1960 through August 1, 1962. In addition to these medical specialists, plaintiff was also examined by Dr. Edward M. Krusen, Director, Department of Physical Medicine & Rehabilitation, Baylor University Medical Center of Dallas, Texas, the findings of whom were presented in a letter to Dr. Simonton dated September 24, 1963.
“It is not feasible to relate in detail all the findings of these physicians with reference to the vertebra in plaintiff’s back. Some of the findings of these experts indicate there may be connexity between such findings and the ruptured fourth lumbar disc removed from the L-4 — 5 interspace by Dr. King on August 25, 1965. Dr. Krusen, after performing an electromyogram, stated that the patient could have some L-5 root irritation which could only be properly determined by an exploratory operation. On the October 12, 1962 examination by Dr. Simonton he found there existed a questionable defect in the last vertebra in plaintiff’s back and that either the instability resulting from this defect or from a small protrusion of the disc was giving Mrs. Jamison irritation of the nerve root. However, subsequent x-ray views of the lumbar spine and a myelo-graphy performed on April 2, 1963 by the doctor failed to disclose any abnormality of the spine. After his examination on April 26, 1963 Dr. Simonton discharged his patient as being without residual disability. However, she returned for treatment on September 20, 1963 and he continued to treat her with reference to the spine through March 29, 1965. Dr. Boykin performed a myelogram on August 1, 1962 from which he concluded that the lumbar and cervical areas appeared to be normal without evidence of space-filling defects except for slight blunting of the nerve sleeve on the left at D-4-D-5 interspace.”
*861 Upon remand Dr. W. J. Hill, Jr. testified that plaintiff consulted him in August of 1965. She was then hospitalized, and Dr. Ray E. Kme. an orthopedic surgeon, was called in for consultation. Dr. Hill’s opinion was that the disc involvement resulted from the accident in 1961.
Dr. King testified concerning his findings in surgery and it should be expressly noted here that, whereas in the letter to this Court upon the original appeal he described the surgery as “ * * * removing a ruptured fourth lumbar disc from the D-4 — 5 interspace on the right side.” His testimony upon remand is clear and concise that the disc was not herniated or ruptured at the time of surgery hut that it was degenerated. He further testified that there was no diminishing or narrowing of the disc interspacing and that the x-rays prior to surgery did not reflect degeneration of the disc. He attributes the degenerated disc, which he removed, to the accident and injury suffered by the plaintiff in 1961. He refers to plaintiff as a young lady — she being 33 at the time of the accident — and says that “young lady” plus trauma under the condition which he found helped him to relate the degenerated disc to the fall suffered by plaintiff.
Dr. Taylor, an orthopedic surgeon, who had never seen the plaintiff nor any medical reports concerning her condition, answered negatively to hypothets concerning whether late appearing degenerated discs could be attributed to trauma suffering several years previously. Dr. Taylor testified as follows:
“Q Doctor, suppose there was no narrowing of the disc spaces, what would that indicate?
“A Well, no narrowing on x-ray is simply a negative finding.”
******
“A Well, sir, in other words, if there is no narrowing on x-ray, you assume from that standpoint that you are dealing with a normal disc.
“Q And if it is degenerated and not protruding, would there be narrowing of the disc space?
“A There may be some narrowing * * * »
Dr. Simonton, who had treated plaintiff until April of 1965, just three months before her surgery, did not connect the degenerated disc with the accident complained of herein. It should be noted that Dr. Simonton, in his treatment of the plaintiff in October and November of 1962, found atrophy of the leg and a questionable defect in the vicinity of the last vertebra; in March, 1963, found absence of the Achilles reflex; and in September, 1963, found “ * * * variable areas of diminished sensation, * * *. ” Upon examination April 14, 1964, Dr. Simonton first discovered that plaintiff suffered from osteoporosis.
Basically, the defense contends that the plaintiff suffers no pain or disability from the 1961 injury and that if any disability exists it is as the result of the disease, osteoporosis, and that the degeneration of the disc resulted from natural degenerative causes.
Osteoporosis is defined as:
“Abnormal porousness or rarefaction of bone by the enlargment of its canals or the formation of abnormal spaces.”
Intervertebral disc is defined as:
“a layer of fibrocartilage between the bodies of adjacent vertebrae, consisting of a fibrous ring (annulus fibrosus) enclosing a pulpy center (nucleus pulpos-us).” [Italics supplied]. Dorland’s Illustrated Medical Dictionary (23d ed. 1959).
Dr. King testified that the degenerated disc was diagnosed during surgery by its absorption of saline, and that he found no narrowing of the interspaces as is often *862 apparent in the presence of degenerated discs. He defines a degenerated disc as one which “ * * * has lost its normal anchoring fibers; it is free to slip and slide, and it does not support the interverte-bral disc as a normal disc would do. It tends to dehydrate and lose its fluid.”
He describes the disc he removed:
“A The fourth disc was not shoved back posteriorly toward the nerve root, it was flat, not bulging or not ruptured, and not at that time herniated. It of course took saline readily, which caused me to know that it was not a normal disc; it was one that had degenerated, and that is the reason I took it out.” (Italics supplied)
Although Dr. Simonton thought that disc degeneration resulting from the 1961 trauma should reflect a narrowing of the inter-spaces upon x-ray, he joined Dr. Taylor in concluding that x-ray findings in this regard are “negative”. Dr. Simonton’s failure to make a positive finding by x-ray during his treatment of plaintiff is not then necessarily opposed to the testimony of Dr. King. Dr. Simonton further testified that degenerative change caused by trauma is usually the result of trauma received in a a sitting position such as the fall received by plaintiff herein. All of the experts who saw plaintiff diagnosed injury in the vicinity of the K4, L-5 region of plaintiff’s back.
Dr. Frederick C. Boykin found blunting of the nerve sleeve at the interspace of L-4 and L-5, and he testified that it could indicate compression of the nerve root by some object at that point.
The testimony of some of the experts that osteoporosis may have effect upon or causal relation to a degenerated disc does not overcome the evidentiary weight of the history of continuous complaint and pain, the objective findings of injury and the eventual finding as the result of surgery. Whether or not there was an original herniation of the disc which relapsed or disappeared and was replaced by degenerative change of the disc, whether or not the degenerative change was of long duration, and whether or not osteoporosis may contribute to a degenerated disc pose interesting conjectures but do not require a resolution for a determination of this case.
The following general rules of evidence cannot be ignored. Expert testimony is no stronger than the facts and circumstances upon which it is founded, and negative testimony is not as persuasive as is positive testimony.
The presumption is $iat witnesses under oath testify honestly until the contrary is shown.
“Where witnesses differ, the courts should reconcile, if possible, the apparent contradiction their testimony presents.” Fridge v. Talbert, 180 La. 937, 158 So. 209 (1934); see also, Cockrell v. Penrod Drilling Company, 214 La. 951, 39 So.2d 429 (1949); Fogleman v. Interurban Transp. Co., Inc., 192 La. 115, 187 So. 73 (1939); and Nelson v. Zurich Insurance Company, 247 La. 438, 172 So. 2d 70 (1965).
Giving consideration to the lay testimony and reconciling where possible all of the medical testimony, the great weight of the evidence as a whole requires a finding of a continuous disability from the 1961 injury. The determination to be made is factual and we concur in the lower court’s judgment.
The judgment appealed from is affirmed at appellant’s cost.