355 So.2d 72 (1978)
Mrs. Brenda A. COURTNEY
v.
LAMBERT CONSTRUCTION CO., INC., et al.
No. 11546.
Court of Appeal of Louisiana, First Circuit.
February 6, 1978.
*73 Gerald Walter, Jr., Baton Rouge, for appellant.
Steven Joffrion and Malcolm Dugas, Donaldsonville, for plaintiff-appellee.
Wm. N. Faller, Baton Rouge, for defendant-appellee.
Before LANDRY, SARTAIN, COVINGTON, LOTTINGER and PONDER, JJ.
PONDER, Judge.
Central Builders, Inc. and Hartford Accident and Indemnity Company, Central's insurer, appealed from a judgment awarding plaintiff $543,283.99 for her personal injuries and for the death of her husband.
The issues are: (1) Negligence of Central's employee; (2) Contributory negligence of plaintiff's husband; and (3) Quantum. We reverse in part and affirm in part.
Central was the dirt sub-contractor for a portion of Interstate 10 near Sorrento. Work on this portion had been intermittent for at least a year. On the day of the accident and for several days before, its employees had been engaged in picking dirt from one side of La. Highway 32, moving it across that highway and dumping it on the other side. The men were using large earth movers, or scrapers, each about 12 feet high, about 10 feet wide, about 33 feet long, painted bright yellow, and each making a complete round trip in about 6 or 7 minutes. Approximately 2,000 feet west of the crossing a 4 by 4 feet sign reading "Road Construction 500 ft." was placed. Approximately 1,500 feet west was a 4 by 4 feet sign reading "Road Construction Next 1.0 miles." These two signs were relatively permanent in structure and had been in place about one year. Approximately 500 feet west of the crossing was a 4 by 4 feet sign reading "Flagman Ahead." This sign was put up before work began and taken down when work ceased. The flagman, garbed with an orange fluorescent vest and waving an orange colored flag, stood in the middle of the lane about 50 feet ahead of the crossing. The highway at this point was straight and level. Daylight conditions prevailed; the weather was clear and dry.
Cecil Courtney and his wife, Brenda, lived in the Gonzales area not far from the scene of the accident. He worked as a service station manager and she as a baby sitter, both in Donaldsonville. They usually passed the scene of the accident twice a day, but occasionally went through Burnside. On the afternoon of the accident, they left Donaldsonville about 5:30. At the T-intersection of La. 3089 with La. 22 they turned right and proceeded behind a pickup truck. Neither the pickup nor their vehicle slowed for the flagman, who had to jump out of the way. The pickup passed barely in front of an earthmover then crossing the highway. The vehicle driven by Courtney went under the earthmover. Mr. Courtney was killed instantly; Mrs. Courtney was seriously injured.
The driver of the earthmover entered La. 22 without stopping or being sure that the flagman had stopped traffic. Certainly, the flagman was attempting to flag down the pickup and the Courtney vehicle but had been unable to get either to stop. The driver testified that the flagman had flagged the pickup and car to stop and the earthmover to proceed. The flagman denies he ever waved the earthmover on. Under the circumstances we have no hesitancy in affirming the trial court's conclusion that the driver of the earthmover was negligent.
The speed of the Courtney vehicle is very much in dispute, estimates ranging from thirty miles per hour to over eighty miles per hour. Mrs. Courtney remembered they were not going over thirty to thirty-five miles per hour and her husband had started *74 to go around the pickup but fell back behind it when she told him they were in no hurry. She did not remember the signs, the flagman and the earth moving equipment. The flagman estimated the car's speed as being well above 55 miles an hour, the legal speed limit. Another Central employee estimated the car's speed as 75 to 80 miles per hour. The court found that the car was not going over 55 miles per hour. While we are inclined to disagree, we find sufficient evidence for the Court to have come to that conclusion. Nevertheless, we conclude that Mr. Courtney was driving too fast under the circumstances.
There is no dispute that the three signs listed above were in place at the time of the accident. There is no dispute that the flagman was attempting to get the pickup and the Courtney vehicle to stop. The lower court excused Mr. Courtney's failure to see and heed the warning signs by an application of the adage, "Familiarity breeds contempt". The two permanent signs had been erected for over a year, while the work on this stretch had been intermittent. We find no justification for this legal conclusion. Instead, the motorist has a continuous duty to "[keep] a proper look out with his [vehicle] under control." Tom Slay, Inc. v. Continental Casualty Co., 321 So.2d 863 (La.App. 1st Cir., 1975); Dessell v. State, Dept. of Public Highways, 328 So.2d 389 (La.App. 3d Cir., 1976).
The lower court excused Courtney's failure to see the flagman by finding that the pickup ahead obscured his vision. We doubt this conclusion. There may have been moments that the pickup prevented Courtney's vision of the flagman, but we do not believe that the pickup obscured Courtney's vision ahead while the vehicles traversed four-tenths of a mile, 2,100 feet from the T-intersection to the crossing. If it did the facts even more cogently convict Courtney of negligence by following too closely. Instead, the estimates of the distance between the pickup and the Courtney vehicle range from one car length to 100 feet. Much is made of the fact that the flagman stood in the middle of the eastbound lane until he had to jump into the ditch to avoid being hit by the pickup and did not have sufficient time to get back into position to flag Courtney, even though he did stick out his flag in front of the car without waving it. We believe, as pointed out above, that Courtney could have seen the flagman well prior to passing the place where the flagman stood.
But even if Courtney could not see the flagman, nevertheless, he could and should have seen all the activity going on at the construction site ahead of and to the left and right of him. The testimony that the vision ahead and to the right and left was clear except for the pickup has been uncontroverted and at least one of the photographs admitted into evidence certainly bears this out. Even though the earthmovers be not evenly spaced, nevertheless, seven large bright yellow machines as well as a large bulldozer should have been seen by Courtney and should have alerted him to imminent danger. His failure to see the earthmover coming near and onto the highway remains unexplained.
Also of great importance is the fact that both Mr. and Mrs. Courtney were familiar with the work going on. While the work admittedly had been intermittent, nevertheless, the earthmovers had been working at this site for two or three days. Mrs. Courtney testified they drove by the scene twice a day quite often. A motorist may not assume the way is clear when he has actual knowledge of a hazard. Martin v. State, Department of Highways, 322 So.2d 827 (La.App. 3d Cir., 1975).
Allowing the deceased to assume the way was clear in light of this knowledge, the warning signs, the flagman, and the construction activity going on in plain sight and to continue driving at the speed of even 30 to 35 miles per hour is absolving him completely of any duty to look out for himself. We find that he was contributorily negligent.
The lower court relied heavily on Kruebbe v. National Fire and Marine Insurance Company, 274 So.2d 832 (La.App. 4th *75 Cir., 1973) for the principle that Courtney owed no duty to stop. We note that the validity of the principle is questionable since the Supreme Court, 278 So.2d 506 in refusing a writ found: "On the facts found by the Court of Appeal, the result is correct." At any rate, we disagree with the dictum as applied to the present case.
We are cognizant of the limited appellate review of facts. However, we believe that our constitutional duty demands more of us than a perfunctory approval of the judgment of the lower court. Moreover, we are in disagreement more with the lower court's application of the law and its conclusions than we are with its finding of fact.
Because of our decision on the issue of contributory negligence it is unnecessary to consider the issue of the award for the husband's death.
The lower court awarded Mrs. Courtney a total of $15,977.54 for her injuries and special expenses. No complaint has been made thereof and we find no error.
For these reasons, we reverse that portion of the judgment awarding benefits to Mrs. Brenda A. Courtney for the death of her husband and affirm that portion of the judgment awarding her $15,977.54 for her personal injuries and special expenses. The costs of this appeal are cast against the plaintiff.
REVERSED IN PART AND AFFIRMED IN PART.
LOTTINGER, Judge, dissenting and concurring.
I concur with my brethren of the majority in the finding of negligence on the part of the driver of the earthmover, however, I dissent as to their finding of contributory negligence on the part of the deceased.
The Trial Judge in written reasons for judgment said:
"The posted speed limit was 55 miles per hour. There is in the opinion of the court no satisfactory evidence to establish that the decedent was proceeding at a rate of speed in excess thereof. His wife, a guest passenger, testified that his speed was much less. It is true that the State Trooper who investigated the accident estimated the speed of the Courtney vehicle at 65 miles per hour but the court sustained an objection to this testimony because it was only an estimate by an officer who was not present at the time of the accident and who was not qualified as an expert in accident reconstruction.
"It is also true that the flagmen, Robert Leggett and Willie Swafford, both estimated the speed of the Courtney vehicle in excess of 55 miles per hour. However their testimony as a whole indicates clearly that (1) both were uneducated laborers with no clear basis for their estimates and (2) that other estimates of speed and distance made by them were clearly erroneous. While their testimony is suggestive it is not sufficient to meet the burden of proof in view of these considerations and in view of the contradictory testimony of Mrs. Courtney.
"Furthermore, even if it be conceded for the sake of argument that the Courtney vehicle was speeding in excess of the posted limit this is immaterial for the reason that his speed was not a cause in fact of the accident. The testimony of the plaintiff expert, Colonel Joseph Andre, clearly demonstrates that the accident would have transpired even if Courtney had been driving at the posted speed limit of 55 miles per hour.
"On the question of notice to the decedent of the construction activity there were posted signs so indicating; however, these signs had been in place for many months; they remained in place twentyfour hours per day, seven days per week; construction activity had been intermittent for some time; and it was after the close of the normal working day. While Courtney therefore had general notice that there was construction activity in the area he had no specific notice that anything was transpiring at the particular time in question on the particular day in question.
"There was a flagman attempting to stop traffic on Louisiana Highway 22 but the *76 uncontroverted evidence shows (1) that Courtney was following immediately behind a pick-up truck; (2) that the flagman, contrary to proper procedure, was standing in the center of the lane of traffic only 50 feet from the intersection; (3) that the pick-up truck failed to stop forcing the flagman to jump out of the way; (4) that the flagman was not visible to Courtney because of the presence of the pick-up truck ahead; (5) that the flagman did not have time to attempt to flag Courtney after the pick-up truck passed; and (6) that at best Courtney could only have seen the flagman a split second before the accident and when it was far too late to take any action to avoid a collision.
* * * * * *
"This court concludes therefore that this accident was a direct result of the failure of the operator of the earth mover to stop before entering the highway and to remain stopped until the traffic had passed or was halted by the flagman, and that Courtney is not chargeable with any negligence which contributed to the accident."
In reversing on the question of contributory negligence, the majority attempts to insulate itself as to any charge of abuse of the appellate review process by saying:
"we are in disagreement more with the lower court's application of the law and its conclusions than we are with its findings of fact." The function of an appellate court is neither to try nor retry a case, but rather to review the trial thereof under prescribed rules.
It is apparent that the Trial Judge concluded from the facts presented that the deceased could neither see the flagman nor the activity ahead of him at the point where the earthmover was to cross the highway. Though the deceased had passed this site often in the days immediately preceding this accident, the majority fails to recognize that the accident happened "after the close of a normal working day." Apparently, the majority would require the deceased to be on his vigil all hours of the night when passing this area.
Accordingly, I find no error on the part of the Trial Judge as to his finding of no contributory negligence, and thus dissent from the reversal by the majority.