NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 19-495

ELAINE LAZARD

VERSUS

PROGRESSIVE PALOVERDE INSURANCE. CO., ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20155777
HONORABLE HERMAN CLAUSE, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Sylvia R. Cooks, Elizabeth A. Pickett, and Jonathan W. Perry, Judges.

AFFIRMED.

Eulis Simien, Jr.
Jimmy Simien
Simien & Simien, L.L.C.
7908 Wrenwood Boulevard
Baton Rouge, LA 70809
(225) 932-9221
COUNSEL FOR PLAINTIFF/APPELLANT:
    Elaine Lazard

**Terry L. Rowe**
**Attorney at Law**
**P. O. Box 3323**
**Lafayette, LA 70502**
**(337) 232-4744**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**State Farm Mutual Automobile Insurance Co.**

**Valerie Briggs Bargas**
**Kolby P. Marchand**
**Kinchen, Walker, Bienvenu, Bargas, Reed & Helm, L.L.C.**
**9456 Jefferson Highway**
**Building III, Suite F**
**Baton Rouge, LA 70809**
**(225) 292-6704**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**21st Century Centennial Ins. Co.**

**PICKETT, Judge.**

The plaintiff appeals the trial court's judgment assessing her with 50% fault for causing the vehicular accident at issue and failing to award her damages for the vertigo she asserts was caused by the accident.

## FACTS

Elaine Lazard filed suit to recover damages for a vehicular accident that occurred in Lafayette on June 8, 2015. She sued Abdul Helou; driver of the other vehicle; 21st Century Insurance Company, Mr. Helou's insurer; and State Farm Mutual Automobile Insurance Company, her uninsured/underinsured motorist insurer. In her suit, Ms. Lazard alleged that Mr. Helou caused the accident, that she was injured in the accident, and that she was entitled to recover general and special damages to compensate her for her injuries.

The record shows that the accident occurred when Ms. Lazard and Mr. Helou were driving east in adjacent lanes on Congress Street and their vehicles came into contact with each other. They moved their vehicles from the street to an adjacent parking lot and waited for a police officer to arrive. The police officer arrived at the scene and investigated the accident but did not cite either party for causing the accident due to the drivers' conflicting statements. Both vehicles were damaged. Ms. Lazard's vehicle was damaged along the driver side, while Mr. Helou's vehicle was damaged on the front right fender. No evidence, other than the parties' testimony and the damage to the vehicles, address how the accident occurred.

At trial, Ms. Lazard presented Mr. Helou's testimony and her testimony as to how the accident occurred. Mr. Helou testified that he was driving east in the left lane of Congress Street east of its intersection with Bertrand Drive, when Ms.

Lazard turned right from Bertrand Drive into the right lane of Congress Street heading east. According to Mr. Helou, after she entered Congress Street, Ms. Lazard activated her left turn signal, so he slowed his vehicle to allow her to enter the left lane. She did not switch lanes, and he accelerated to get past her. As he accelerated, Ms. Lazard switched lanes. Mr. Helou testified that he tried to avoid the accident by moving into the left turn lane but was unsuccessful. Mr. Helou further testified that they moved their vehicles to avoid blocking traffic and that he followed Ms. Lazard as she drove from the street. He denied that he suggested to Ms. Lazard that they move their cars after the accident.

Ms. Lazard testified that she was traveling east in the right lane of Congress Street when Mr. Helou drove his vehicle into her lane of travel and hit her driver's side door. She denied using her left turn signal and stated that she never intended to change lanes. She further testified that Mr. Helou approached her after the accident happened and stated: "let's hurry and get our car[s] into the Cajunfield parking lot before the policeman come[s]." Ms. Lazard introduced a photograph into evidence showing damage to the driver's door of her car.

Ms. Lazard testified that she injured her knees and right thumb and that the fingernails of her left and right hands were broken down into their nailbeds. She further testified that she suffered head injuries, headaches, neck and back pain, and dizziness as a result of the accident. In addition to her testimony, she presented the testimony of her husband and Dr. P. Elise Scallan, an ear, nose and throat specialist who treated her after the accident for Benign Paroxysmal Positional Vertigo (BPPV), and the medical records and bills regarding the medical treatment she received for the injuries she suffered in the accident.

At the conclusion of the trial, the trial court gave oral reasons for ruling, finding that both drivers were 50% at fault in causing the accident and awarding Ms. Lazard $25,000.00 in general damages and $911.25 in special damages. The trial court concluded that Ms. Lazard did not prove that her BPPV was caused by the accident and did not award her any damages for that condition. Ms. Lazard appealed.

## ASSIGNMENTS OF ERROR

On appeal, Ms. Lazard assigns the following errors with the trial court's judgment:

1. The Trial Court erred in failing to resolve the irreconcilable dispute in the testimony between the plaintiff and the defendant and instead simply decided to allocate fault at 50/50 because it would not make a determination.

2. Despite proof that clearly met the plaintiff's burden under *Housley v. Cerise*, 579 So.2d 973 (La.1991); *Maranto v. Goodyear*, 650 So.2d 757 (La.1995); *Dabog v. Deris*, 625 So.2d 492[] (La.1993) and no countervailing evidence the Trial Court erred in failing to find that the symptoms related to plaintiff's Benign Paroxysmal Positional Vertigo was caused by the collision.

*Fault*

The trial court gave the following reasons for its determination that the parties were each 50% at fault in causing the accident:

> [I]t has been proven than [sic] an accident occurred in this case on June 8, 2015, and that it involved a collision between the vehicle of the plaintiff and the vehicle of the defendant. That's . . . the only thing I can say that's positively without doubt, established. . . . There are two versions how the accident happened. Defendant says plaintiff went in his lane. Plaintiff says defendant went in her lane. No other persuasive evidence was offered. As far as . . . having a basis to give credibility to one as opposed to the other, I really have no basis to say that one of the witnesses was more credible than the other witness. They both had indicia of credibility. They both had some indicia of non-credibility. I find it was about equal. So it leaves me, as far as the question of fault, to say they were approximately both 50 percent at fault.

Ms. Lazard had the burden of proving by a preponderance of the evidence that Mr. Helou caused the accident and that the accident caused the injuries for which she seeks damages. *Miller v. Leonard*, 588 So.2d 79 (La.1991). "Proof by direct or circumstantial evidence is sufficient to constitute a preponderance when the entirety of the evidence establishes the fact or causation sought to be proved is more probable than not." *Id*. at 81.

Ms. Lazard urges that the trial court committed legal error in failing to find that she or Mr. Helou was 100% at fault for the accident. Appellate courts conduct a de novo review if the trial court makes an incorrect legal conclusion regarding a question of law. *Latiolais v. Bellsouth Telecomms., Inc*., 11-383 (La.App. 3 Cir. 10/5/11), 74 So.3d 872. Factual findings are reviewed pursuant to the manifest error-clearly wrong standard, and the findings of the trial court will not be set aside unless a review of the entire record shows that they are clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

Ms. Lazard relies on *Simmons v. Transit Mgmt. of Se. La., Inc.*, 01-1648 (La.App. 4 Cir. 5/8/02), 819 So.2d 1083, *writs denied*, 02-2112, 02-2097 (La. 11/1/02), 828 So.2d 581, 828 So.2d 582, respectively, to support her contention that the trial court legally erred in not making a determination that one party was more credible than the other and ruling in that party's favor. The court in *Simmons*, 819 So.2d at 1086 (emphasis added), observed:

> In the instant case, two diametrically opposite versions of the accident were presented at trial. The plaintiffs' version has Mr. Simmons falling out of his wheelchair while he is being pushed off of the lift. The defendants' version has Mr. Simmons falling out of his wheelchair while he was wheeling himself down the sidewalk. It was not reasonable for the jury to conclude that Mr. Simmons and Mr. James were each 50% at fault in causing the accident. *Based on the stories presented by both parties, the jury should have made a*

4

*credibility determination and found one party or the other 100% at fault because each version of events is mutually exclusive and incompatible with the other. Because we find that the jury's finding as to fault was manifestly erroneous, we must now examine the record and make a determination as to fault.*

After making these conclusions, the court continued and explained that the plaintiff presented evidence corroborating his version of the accident which included deposition testimony of an eyewitness to the accident and an accident report prepared by a supervisor for the defendant that concluded the defendant's employee was at fault for the accident. This is not the case here.

Ms. Lazard further argues that *Nelson v. Zurich Insurance Co.*, 247 La. 438, 172 So.2d 70 (1965), required the trial court to rule in her favor or Mr. Helou's favor. The supreme court observed in *Nelson*, 247 La. at 446, 172 So.2d at 72 (emphasis added):

> 'Where witnesses differ, the courts should reconcile, *if possible*, the apparent contradictions their testimony presents. If this cannot be done, then the probabilities or improbabilities of their respective statements must be considered in the light of their capacity, opportunity or incentive for observation, the amount of corroboration, if any, and the degree of proof required.' *Fridge v. Talbert*, 180 La. 937, 158 So. 209 [(1934)].

The supreme court rejected Ms. Lazard's argument in *Miller*, 588 So.2d 79, where it explained that prior discussions in which it indicated that a court must weigh and accept one party's testimony over another's was an incorrect interpretation of the language used therein. The supreme court clarified that those discussions were "intended to serve as an aid or suggested method for judicial determination of facts from which it can be decided *which party, if any*, has borne the burden of proving his case by a preponderance of the evidence." *Id.* at 83 (emphasis added).

The supreme court further explained:

> Where the evidence is truly in equipoise and neither of the opposing plaintiffs satisfies the burden of proof by a preponderance of the evidence, must the trial judge nevertheless decide for one of the parties? We think not.
>
> . . . .
>
> This court is mindful of its duty to decide issues of law and fact. We are also aware dismissal of both opposing plaintiffs, where neither satisfies his burden of proof by a preponderance, may result in an innocent litigant without a remedy. The alternative, however, is unpalatable. Where the evidence is truly balanced, such that neither of the opposing plaintiffs satisfies the burden of proof by a preponderance, the trial court forced to decide the case must in essence render a decision based on the fortuitous flip of a coin. The distinction between reviewing the evidence and employing interpretative techniques of fact finding to determine if a decision can be made (i.e., has one of the parties proven his case by a preponderance of the evidence?) and being required to reach a decision, even where the total evidence is in equipoise, is critical. The first is a proper function of the court. The second is not.

*Id.* at 83-84.

Unlike *Simmons*, 819 So.2d 1083, *Nelson*, 172 So.2d 70, and *Miller*, 588 So.2d 79, and the other cases Ms. Lazard cites, neither Ms. Lazard nor Mr. Helou presented any evidence corroborating their description of the accident. Moreover, the manner in which the accident occurred and the damage to the parties' vehicles is such that either or both parties could have been at fault, by negligently veering into the other parties' lane of travel. There was no physical evidence such as debris from the collision in either party's lane of travel that would corroborate one version of the accident. After viewing the parties and hearing their testimony, the trial court determined neither party was more credible than the other. We are not in a position to second-guess that conclusion. Accordingly, Ms. Lazard has failed to show the trial court legally erred in failing to conclude that she or Mr. Helou was completely at fault for the accident.

6

*Damages*

Ms. Lazard next argues that the trial court erred in concluding that she did not prove the benign paroxysmal positional vertigo (BPPV) she experienced after the accident was caused by the accident. A determination that "an accident caused a person's injuries is a question of fact which should not be reversed on appeal absent manifest error." *Housely v. Cerise*, 579 So.2d 973, 979 (La.1991).

Ms. Lazard argues that the following presumption for proving causation set forth in *Housely*, 579 So.2d at 980 (quoting *Lukas v. Insurance Company of North America*, 342 So.2d 591, 596 (La.1977), applies to her claim for BPPV damages and that the trial court erred in refusing to apply the presumption:

> "[a] claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.

Therefore, if the fact finder's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse. *Id.* Furthermore, when there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. *Id*.

The trial court made the following findings of fact as to Ms. Lazard's claim for BPPV damages:

> As to the injuries relative to the BPPV the Court finds that the *Housley* presumption . . . the symptoms . . . didn't seem to appear shortly after the accident. In fact, the first mention was over two months, post-accident, despite an opportunity in giving history to medical people that there was a dizziness issue. But it didn't happen. In fact, it finally happened with Dr. Scallan, as a result of a note which was furnished, post the first examination. So I find that [the

7

plaintiff has] not established damages and is not entitled to *Housley* presumption on the question of BPPV.

Ms. Lazard made her first complaint of dizziness to a medical provider on August 10, 2015, when she reported to a physician at an After Hours clinic that, she had been experiencing spinning dizziness with changes in her posture for three days. The physician noted that the symptoms were acute and diagnosed BPPV. On August 12, 2015, Ms. Lazard saw Dr. Scallan and reported that she had experienced dizziness for three days "with movement, turning her head right and left." After seeing Dr. Scallan, Ms. Lazard saw an audiologist in Dr. Scallan's office, who documented that Ms. Lazard reported to her that she had been on a trip to Chattanooga, Tennessee, and began experiencing dizziness after she returned home. Dr. Scallan's records show that two days after her visit, Ms. Lazard faxed a statement in which Ms. Lazard reported that she began experiencing dizziness shortly after being involved in a vehicular accident.

Dr. Scallan testified that BPPV is a vestibular disorder to the inner ear which is one of the most common causes of vertigo. It is more common in older adults and females. Dr. Scallan testified that BPPV is generally idiopathic[1] in nature and that typically only a very small percentage of BPPV is precipitated or caused by a particular event. She explained that it was not common for an accident to be the cause of dizziness when there is a delay such as the one between this accident and Ms. Lazard's first complaints of dizziness. Dr. Scallan ultimately testified that it was possible the accident at issue or her trip to Chattanooga caused Ms. Lazard's BPPV or that the condition occurred without being caused by a specific event.

---

[1] The term idiopathic is defined as "arising spontaneously or from an obscure or unknown cause." https://www.merriam-webster.com/dictionary/idiopathic.

As the trial court noted in its reasons for ruling, though Ms. Lazard testified that she began experiencing dizziness immediately after the accident, she did not report the dizziness to Dr. Donnie Batie, her primary care physician, on July 16, when she saw him to monitor her hyperlipidemia. Dr. Batie's record for that visit indicated that she complained of headache and low back pain but denied having dizziness.

For these reasons, we find no manifest error with the trial court's finding that Ms. Lazard failed to show that her BPPV commenced with the accident and, therefore, find no error with its refusal to apply the *Housely* presumption to her damage claim for this condition.

## DISPOSITION

The trial court's judgment is affirmed. All costs of this appeal are assessed to Elaine Lazard.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.